of Lawrence. Oral argument, 15 minutes per side. Mr. Narula for the Division of Finance. Good morning. May it please the court. My name is Anthony Narula from the Access Law Group on behalf of the defendant appellant at the University National Bank of Lawrence. And I'm also here with UMB's president today, Todd Sutherland. I'm respectfully requesting four minutes for a rebuttal. You may. Your Honors, this appeal involves the de novo review, a breach of contract claims brought by the plaintiff appellee, Franklin American Mortgage Company, as it relates to two residential mortgages and alleged misrepresentations for which UMB sold those loans more than a decade ago in 2006 and 2007. This case is quite unique from the other cases with related opinions on this matter. First, because it mandates the application of the Kansas statute of limitations by virtue of the Tennessee borrowing statute. And second, because no other defendant had obtained the fatal admissions, deposition testimony, and stipulations from Franklin American that UMB had, in which the district court entirely ignored in its opinion. What are those? What's the import of those? What did they say? That's a fantastic question, Your Honor. And in deposition, and not just one, but in two, I also had a similar case, Evergreen Mortgage Corporation, where Franklin American made the same deposition concessions and then later voluntarily dismissed its claim. And in the deposition, what they said was threefold, Your Honor. First, they said that the loans were defective at the time they purchased them. And as a result, they were less valuable, and that they could have turned around to the correspondent lender, UMB, immediately, and sought repurchase and indemnification without first selling those loans to a third party such as Wells Fargo. Okay, but I get the concession that they were defective immediately, and that they could have. But did they concede that they knew they were defective immediately? No, they don't, Judge. However, the discovery rule does not apply in this case. And the reason is Kansas law, the borrowing? Why not? I'm happy to address that, too, Judge. The discovery rule has never been recognized by the Tennessee Supreme Court or the Sixth Circuit Court of Appeals, this court. In fact, in the Dean Witter case, it specifically rejected that. We just don't know what Tennessee would say, do we? We absolutely do. Tennessee does not, hands down, recognize the discovery rule in contract cases. And I've asked the court, by virtue of the Tennessee borrowing statute, to apply the Kansas shorter five-year statute of limitations, which it's undisputed, even FAMC does not dispute, that the Kansas statute of limitations does not recognize a discovery rule in breach of contract cases. Now, even in Tennessee, the recognition of the discovery rule was just in one outlier case, an unpublished decision with limited application. And the rule in that case, which was the Goot case, which was a mid-level Tennessee state appeals court, was that the rule was, if it's inherently undiscoverable despite due diligence, that's the rule. And in that case, there was actually fraud on behalf of the defendant, concealing all sorts of representations. And that's why the court went so far as to say that just in this certain subset of cases, we'll go ahead and apply the discovery rule. However, the discovery rule is not applicable in this case, even if this court were to find that the Tennessee statute of limitations governs. And even if it was, it wouldn't apply to that small, narrow subset of cases. Why? Because FAMC easily discovered these misrepresentations, many years too late, and in a letter said to UMB, based on our post-purchase review, we found these problems. And, in fact... But they claim, they don't necessarily hang their hat on the discovery rule, right? They claim that they have independent claims arising under Section 8 and Section 10, I guess, of the agreement. Right, Judge. And that's the fatal flaw in their claim. Because there's three different types of breaches alleged in FAMC's complaint, and I'll walk through them in turn. The first is Section 6, which relates to representations on mortgage loans. Right. The second is Section 8, which is in regard to repurchase remedy. And Section 10, which relates to indemnification remedy. Now, the district court found it was undisputed that UMB breached Section 8 as of the time of the loan sale in 2006 and 2007. However, they said, because the allegations of the complaint didn't include allegations of breaches of those Section 6 representations, we find that the statute accrued in 2010 when FAMC had to pay a third party. That's not true. Based on a simple review of the record and concessions in FAMC's response, as I've outlined in my brief, paragraphs 24 through 25, 27, 29, 32, and in their response brief, page 24 through 26 and 35, there's all sorts of allegations that there was a breach of Section 6. Now, with regard to 2010, the only reason the court found that the allegations accrued based on a payment to a third party was also flawed. In what way? Flawed. Flawed. I'm happy to explain. Because these remedies for repurchase and indemnification naturally hinge on an underlying breach of Section 6, a claim about a loan being good or bad. They're only triggered by an underlying breach of Section 6. So your ability to seek repurchase and indemnification accrue at the same time that the breach did. Now, in a very similar case, Lehman Brothers Holdings, Inc., versus Universal American Mortgage Company decided by the Tenth Circuit, they determined that even if the plaintiff had brought claims for indemnification, we would have construed them as ones for breach of contract, and that the plaintiff in that case distorted the true meaning of indemnification and that the claims accrued at the time of the sale, not later when they paid some third party. Notably here, FAMC didn't even bring a claim for indemnification. It relies on case law to show that their claims accrue when they make a payment to a third party. But they didn't plead indemnification. They amended their complaint, but they didn't plead indemnification. FAMC has sued many parties in the middle district of Tennessee. Later, they started to learn and pick up on their mistake and add indemnification claims. Not so in this case. Now, the deposition testimony shows that they didn't have to wait to a payment to a third party to seek indemnification or repurchase. They could have done it immediately. That was their own words. What more persuasive evidence is there? And the district court didn't even address it in the opinion. So we know that the statute begins to run upon the sale. Practically speaking, how does a loan purchaser evaluate it immediately? I don't know how you actually do it to find out the underlying mess that you're considering buying. Here's how you do it, Judge. Here, UMB sells a loan to FAMC. It makes certain representations and warranties. FAMC makes more extensive, independent reps and warranties to Wells Fargo. I'm FAMC. I'm telling Wells Fargo it had nothing to do with UMB. I reviewed these loans. These loans are good. I promise you they're good. It has nothing to do with UMB's review. But what FAMC did here is that they did a pre-purchase audit review. The loan files were sent to Texas, not Tennessee, with the longer statute of limitations. These loan files were sent to Texas, and that's something that FAMC stipulated to. And they conducted a pre-purchase audit. They audited these files, and they requested that those wire funds for the payments on those loans be made from Texas. And that's another stipulation from FAMC. How much is the damages all told in this case? The damages, Your Honor, the judgment was for $188,000. $188,000. And you might be asking yourself, well, that's not a heck of a lot of money. And you guys are litigating all the way to the Sixth Circuit. Let me tell you, UMB has previously indemnified FAMC when it's made legitimate claims. But here they were not legitimate. FAMC itself. You answered my question. I'm sorry. I'm sorry. But my point was that it's a tremendous amount of money for UMB, and it could destroy the company. So it had to contest these claims. And even FAMC disputed that these were loan-level defects. It appealed these decisions to Wells Fargo. Its corporate representative in deposition adamantly contested that one of the allegations were, in fact, true. And they still paid Wells Fargo. And one of FAMC's employees in a report that was authenticated in deposition said that. All of these points are made carefully in your brief. Yes, Your Honor. Yes, Your Honor. And I just highlight. The employee said what? I interrupted you. But the employee said what? You were. No worries. In a sentence. No worries. Outside of the corporate representative in deposition discussing how she disagreed with one of the claims on the Salvino loan, but still paid Wells, an employee of FAMC on the Turner loan in a report said that we don't agree with these allegations. The loan is good. The conditions were met. So my point is all of these are disputed material facts and certainly shouldn't have been ruled upon the way it did at the summary judgment level. Now, we talked about when this claim accrued. That red light means you don't get to keep going. No worries. I appreciate it. I have rules here, unfortunately. Thank you. Okay. Thank you. Thank you, counsel. Have you reserved some time? I have, Your Honor. Good. Okay. Good morning, Your Honors. Charles Cain of the Tennessee Bar on behalf of Franklin American Mortgage. The brief set out most of the facts here in grave detail. Some of the facts recited by Mr. Narula momentarily ago were actually not entirely true. One of the major issues that he just mentioned is that Franklin American did not make a claim for identification in the complaint. That's patently untrue. The complaint at paragraph 38 claims identification on the Salvino loan. And in paragraph 41, it claims identification on the Turner loan. The identification claim is a very significant part of the issue here because even if all of the other arguments regarding the statute of limitations, the borrowing statute, the date in which the loans were initially purchased, Tennessee law is very different than some other states. Tennessee law specifically recognizes that an identification claim can be maintained separate from any other breach that occurs under that same contract, even a previous breach based on the same facts and circumstances. The Johnson case makes that perfectly clear that it is maintained as a separate and independent claim. Then the Tennessee law takes on under Stiver the idea that when that type of claim accrues. And under Stiver, the claim accrues only when, in this case, the plaintiff, Franklin American Mortgage, paid damages, in this case repurchased the previous bad loans from its investor. That clearly occurred within the statute of limitations regardless of which of the two states' statute of limitations you apply. Kansas, five-year statute of limitations. Tennessee, six-year statute of limitations. Those things did not occur more than five years. In fact, they only occurred just a few years. Do you agree, counsel, that the law in Tennessee is unclear whether the discovery rule, the claims accrual is? Your Honor, I will concede that the Tennessee Supreme Court has not ruled on it. I will not concede that the Tennessee Court of Appeals has not ruled on this because the Goot case came out in 2005. The case is cited by University. The reason I ask is whether or does it seem that this court ought to solicit the Tennessee Supreme Court to answer that very question? That has been requested in a separate Franklin American case. And it pens? Did the court accept the question? It has been stayed. The motion to certify the question to the Tennessee Supreme Court has been stayed because there is a case before the Tennessee Supreme Court that is similar. Wait, so pending before the Tennessee Supreme Court now is a question on whether they're going to recognize the discovery rule? Whether the discovery rule applies in Tennessee. And can you tell us the name of that case? I do have it, but it is Blue Cross Blue Shield of Tennessee. I would have to give it to you. The Tennessee Supreme Court has not ruled on that case. What we have is Goot. And from 2005 forward, the Tennessee Court of Appeals has ruled on that same issue four times. And it's never questioned the finding in Goot. The only case cited by UNB that suggests after 2005, after the Tennessee Court of Appeals ruled in Goot, that the discovery rule doesn't apply is a federal district court case, the opinion from Judge Trauger in 2007. That is the Fidelity National Title v. Archer case. It appears that Judge Trauger just was not aware of the Goot case at the time. There's no mention of it. In fact, in that opinion, Judge Trauger cites- Honestly, that's not going to be helpful to us either way, is it? It's not. And the issue is that every case since the Goot case originally announced this- The Goot case has not been reviewed by the Supreme Court. I don't know if it was appealed or not. It has not been, Your Honor. It has never been found in any state court of Tennessee to be anything- Is the Tennessee Supreme Court a court that is a certiorari or do they take all comers? No. They pick and choose? The Tennessee Supreme Court will deny certiorari, yes. They can deny? They can. I see. Yes, Your Honor. Okay. But even if the discovery rule did not apply and the Tennessee Supreme Court said, no, we don't have a discovery rule under Tennessee law on breach contract claims, which is really all that Goot deals with is breach contract claims. And that's not dispositive of the issues here. Why not? There's two issues. First, the claims made by Franklin American Mortgage are not claims under Section 6 of the contract, which sets forth the representations and warranties made. The argument you heard is, of course, the misrepresentation has to underlie every indemnification claim, right? I believe that's the argument we heard. That is their argument, Your Honor. And their argument is based on a line of cases that have been used in these mortgage repurchase cases all over the country. And those cases, without exception, deal with New York law. And we refer to them in the briefs as the New York line of cases. The impressive cases argued by some of the best lawyers in the country, right? Absolutely. But when you look at those cases, though, there are a number of differences between those cases in this case from a factual standpoint. But number two, New York law is simply different than the law in Tennessee. It is also different than the law in Missouri and Minnesota and Delaware. And the cases in those states that have interpreted those laws have shown that New York's law on these, and I'll go into that momentarily as to why that's the case, but those cases recognize that New York law stands different than the law in many other states, particularly in Tennessee. We do not have any law in the state of Tennessee. Does that mean we don't know what Tennessee law is exactly doing? Oh, I think we do. And I say that because, Your Honor, I don't mean to diminish the question. What I understand is these mortgage repurchase cases, by and large, you have sophisticated, large companies buying thousands of them at a time, right, as a general rule. That's not what Franklin American does. Franklin American buys individual loans one at a time. And it has a contract that is intended to mirror what its obligations to its investor requires of Franklin American, so that when Franklin American is required under its contract to repurchase a bad loan or to identify its investor for that bad loan, that it, in turn, has a remedy against the originating mortgage company, in this case, University National Bank. Those types of claims are very different than the ones that are, for the most part, where the New York line of cases started. The New York line of cases started, and when you look at the case names themselves, you will notice they all talk about trusts, because these are mortgage-backed securities that are sold in pools of mortgages, big, large pools of mortgages, where nobody really knows what the individual. So I understand the factual distinction. I'm just wondering. I keep waiting for the legal distinction. The legal distinction, though, is to understand why it's this way, is that the contracts in those New York lines of cases have a lot of representations and warranties that are very different than the representations and warranties in our contract. In what way? Specifically, in the contracts in the New York lines of cases, there are representations and warranties of what the seller knew at the time they sold the mortgage, not that there was any sort of warranty that that information would be correct going forward, which is what the representations and warranties in our contract says. So they are different from a factual standpoint. More importantly, though, the law is different from the New York law, and the New York law is based on the idea that when a breach occurs, a breach of a representation or warranty, the act of demanding repurchase is, in the words of the Delaware court that reviewed this, it is simply a procedural condition precedent to going to file a lawsuit. That is, you have to provide notice of the breach and demand repurchase before you can sue. That court looked at this and said, but the argument from someone in my position was arguing that, no, that is a sustainable condition. And the court went on to say, but the New York law doesn't view it that way. New York law views the act of demanding repurchase as just some procedural issue, and it does not recognize that failure to actually repurchase as a separate independent claim. New York cases worry about eviscerating statutes of limitations. That, and they view subsequent failures, even if those failures are independent acts, if they are based on the alleged misrepresentation, then they revert back to the initial, very first breach, which they say is the misrepresentation. Tennessee law takes a different view. And I say that in this case. We don't have a long line of cases in the state of Tennessee on mortgage repurchases, which are fairly unique in the way that these kinds of breaches would come up. You don't see this in a lot of regular contracts, because these mortgages sit out there for some period of time. Particularly in this case, these are Fannie Mae mortgages. And the issues were found not by Franklin American originally. They were found by Fannie Mae. And Fannie Mae has essentially unfettered discretion to say, you know what, you sold that mortgage to us as a Fannie Mae loan, and we as a GSE, we have a right to determine whether or not you met our requirements or not for us to insure that mortgage. And lo and behold, a couple of years after you sold it to us, Fannie Mae comes in, does a review, and says, you didn't. And here are the three or four things that you did wrong, which is exactly what happened with both of these mortgages, which is it wasn't a single misrepresentation. There were representations in there about the validity of UNB's own underwriting. And that is to say that when UNB took on the delegated authority to underwrite that loan, it took on the obligation to be solely responsible for complying with Fannie Mae guidelines. And Fannie Mae decided, no, you didn't. And while we were able to refute one or two of the issues, both loans had unresolved issues with them. So when Fannie Mae comes back several years down the road, our contract provides a mechanism for demanding repurchase and saying, okay, you guaranteed this, you did all of the underwriting, and you took the responsibility on. And they do that because it saves them money. This isn't some kind of gift. They benefit financially from the ability to do this underwriting. So when that happens, the contract spells out point blank what's supposed to happen. We've got to give them notice. They've got 30 business days to respond and make a payment. And when they fail to do that, they have now taken an independent action to breach that contract a second time. That is the claim that was originally in the Salvino loan. But there is also a second claim under the Salvino loan, which is the identification provision, which is Section 10. Tennessee law recognizes that independent failure to identify as a separate claim. That's where Johnson and Stiver come in. It sets Tennessee apart from the New York line of cases. So regardless of where we end up with the statute of limitations, until Franklin paid, that independent identification claim just didn't accrue under Tennessee law. I'm sorry, Your Honor. No, no, it's fine. It's really a question for your opponent. I'm out of time. Thank you, Your Honor. Thank you. Thank you. And in regard, in an attempt to clarify some of the statements about indemnification, what I had contended, which it... I'm curious about that audit, too. Sure. There's a pre... Tell me about that audit. Sent to Tennessee to audit. Sure. It was actually sent to Texas. So the loan... Texas, I said it wrong, but yes. Right. So the loan files, once they were underwritten, were sent from Kansas, and UMB sent them to Texas, which was a branch office of FAMC. At that office, there was a pre-purchase audit conducted, and that's stipulated by FAMC. Once they do that, then from Texas, they initiate... Could be a claim against an audit company. Which was FAMC. It's all in-house. Okay. Right. So that's my point. They had an opportunity to review these loans, and GOOT wouldn't have applied, because the standard is it must be inherently undiscoverable despite due diligence, and they did due diligence, and they ultimately did find the loans post-purchase, the defects post-purchase. So let me ask this question. So when you stood up here before, you alleged that they did not bring an independent indemnification claim. Right. You say they don't. They say they do. You say later, in other cases, they learned from their mistakes, and they started to bring them. Your opponent claims that if there is such thing under Tennessee law as an independent indemnification claim, they're within the statute of limitations. The New York cases are distinguishable. They win. So does this case turn entirely on whether or not they alleged an independent indemnification claim in their complaint? Because that seems pretty easy for us to figure out. No, it wouldn't, because the barring statute would still apply, and Kansas law governs. But, however, let me clarify this point. There was no separate independent cause of action for indemnification. What happened was there's count one, breach of contract. Underneath that, there's allegations for seeking relief for indemnification. Count two, breach of contract. Underneath that, there's a remedy sought of indemnification. In the line of cases that counsel relies upon, those plaintiffs brought independent causes of action for indemnification. That was simply my point. So if we read the complaint and we agree that the complaint reads the way your opponent says rather than the way you say, then there would be an indemnification claim. And we're going to have to look, obviously. Go back. Right. And as FAMC concedes in deposition, they could have brought an indemnification claim immediately when they suffered a loss when they bought the loan, even before selling a loan to a third party or making a payment. Right. And that's the key. We don't, even if they did bring it, they'd still fail. And, in fact, in Lehman v. UAMC. Oh, wait. You say even if they brought an indemnification, they'd still lose. Why is that? Right. Because they concede that they could have brought an indemnification claim immediately when they purchased the loan, even before selling the loan to a third party or making a payment. And, in fact, in the Lehman v. UAMC case in the Tenth Circuit, they said that even if they had brought an indemnification claim, which they didn't, they would have misconstrued the meaning of it because the claim accrues at the time of the sale because of the underlying rep and warrant. I just want to make one point, which I thought was very interesting. You all thought about certifying the issue to the Tennessee Supreme Court. And we had thought about that as well. But while that might be a good idea, it's not necessary here because the borrowing statute does apply. We talked about when the claim accrues, but we didn't get to talk about in my initial arguments where the claim accrues. And there's this case called Swanson v. Wilson, which the district court had relied. And the district court candidly said it's very unclear here where the claim accrued, but they acted in both states, Kansas and Tennessee. Well, if you read the Swanson case, it says when a claim accrues in more than one state, we apply the shorter statute of limitations. And that's the key here. Even the district court recognizes that there's actions in both states. The next step would be to apply the shorter statute, which is Kansas, which is five years and does not recognize the discovery rule. There's also a case called Willits v. Peabody that this court ruled on. It's the Sixth Circuit case. It's exactly on all fours. It's identical. The court decided whether to apply the Kentucky borrowing statute, and they did. And what they said is that the dispositive act was the miscalculation of royalties by the defendant. That's where the claim accrued, not where the payment was sent. That's not the final act, right? And there was no distinction of that case by the respondent or the district court. So that's our best case, the Willits case. And it was by this court, which applied a borrowing statute, and it found that the dispositive act was a miscalculation of royalties. Here, that would be akin to— Counsel, we will look at that case. Okay. Thank you. It seems your argument time has expired. Appreciate it. Can I give you the case name? Yes, please. We would like to have that. Individual health care specialists v. Blue Cross Blue Shield of Tennessee. The appeals court case is Citation 2017, Tennessee, Appellate Lexis 360. We can find it with that. All right. Thank you, counsel. All right. Thank you both for your argument. Thank you. As you've heard, we will consider your argument carefully. You will receive an opinion. Thank you.